1  Steve W. Berman (*pro hac vice* pending)
   Ari Y. Brown (*pro hac vice* pending)
2  HAGENS BERMAN SOBOL SHAPIRO LLP
3  1918 Eighth Avenue, Suite 3300
   Seattle, WA  98101
4  Telephone:  (206) 623-7292
   Facsimile:  (206) 623-0594
5  *steve@hbsslaw.com*
   *ari@hbsslaw.com*
6        -and-
7  Jeff D. Friedman (173886)
   HAGENS BERMAN SOBOL SHAPIRO LLP
8  715 Hearst Avenue, Suite 202
   Berkeley, CA 94710
9  Telephone: (510) 725-3000
   *jefff@hbsslaw.com*
10
   *Counsel for Plaintiffs and the Proposed Class*
11

12

13                 UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                      SAN JOSE DIVISION

16  LILA WASHINGTON; LAURA                          No.
    WASHINGON; RYAN and KRISTIN
17  BRANDT, husband and wife; KENNETH and
    CASANDRA BARRETT, husband and wife, on   CLASS ACTION COMPLAINT
18  behalf of themselves and all others similarly
    situated,
19
                             Plaintiffs,
20
          v.
21
    LUMBER LIQUIDATORS, INC., a Delaware
22  corporation,
23                           Defendant.

24

25

26

27

28
    CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ...................................................................................................1

II.     JURISDICTION .....................................................................................................5

III.    PARTIES .................................................................................................................5

IV.     FACTUAL ALLEGATIONS ..................................................................................6

      A.  Lumber Liquidators Represents that its Laminate Wood Flooring Products Meet California's Strict Emissions Standards for Products it Sells in Every State .............6

      B.  California's Formaldehyde Standards ........................................................7

      C.  Lumber Liquidators' Composite Laminate Flooring Products ...................................8

      D.  Lumber Liquidators Misrepresents that its Composite Laminate Flooring Products Meet California Emissions Standards ........................................................11

V.      FACTS RELATING TO NAMED PLAINTIFFS ................................................17

      A.  Laura Washington and Lila Washington ................................................17

      B.  Kenneth and Casandra Barrett................................................................19

      C.  Ryan and Kristin Brandt .........................................................................21

VI.     CLASS ACTION ALLEGATIONS ......................................................................24

VII.    CAUSES OF ACTION..........................................................................................27

      COUNT I:  FRAUDULENT CONCEALMENT ......................................................27

      COUNT II:  VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *ET SEQ* ..................................................................................28

      COUNT III:  VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.*, UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS  ACTS AND PRACTICES ........................................................................30

      COUNT IV:  VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500, *ET SEQ.* ...........................................................32

      COUNT V:  VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT,  CAL. CIV. CODE § 1750 *ET SEQ.* .....................................33

      COUNT VI:  VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT ...................................................................................................35

      COUNT VII:  VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT .................................................................36

1          COUNT VIII:  BREACH OF EXPRESS WARRANTY .......................................................37

2          COUNT IX:  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY ...........38

3          COUNT X:  DECLARATORY RELIEF ...............................................................................39

4    VIII.    PRAYER FOR RELIEF .........................................................................................................39

5    IX.      DEMAND FOR JURY TRIAL ............................................................................................40

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.      INTRODUCTION

1.      Defendant Lumber Liquidators, Inc. has been selling composite laminate flooring products that emit formaldehyde at levels known to pose serious health risks.  The formaldehyde emissions from certain Lumber Liquidators products far exceed the maximums allowed by the California Air Resources Board ("CARB").  For nearly two years, and possibly longer, Lumber Liquidators has known that flooring products it has manufactured in China to its specifications and which it intends for use in people's homes emit unsafe levels of formaldehyde.  Nonetheless, Lumber Liquidators has continued to specifically and falsely label these products as being compliant with all CARB formaldehyde standards and to falsely state on its website and elsewhere that its products "meet the highest quality and environmental standards."  As a result, consumers have been buying flooring products from Defendant that are unsafe and should not be distributed or sold – and certainly not sold with the representation that the products meet the strict formaldehyde standards Lumber Liquidators claims they meet.

2.      Laminate wood flooring is generally composed of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is a mixture of sawdust or wood particles bonded together with glue or resin.  The base layer is covered with a veneer or other material such as a photographic image of wood, affixed as a decorative surface.

3.      Formaldehyde is a common ingredient in the glue used in the composite laminate flooring base layer.  If used in low levels, the formaldehyde will quickly dissipate during installation.  However, if used in higher levels, the formaldehyde is released as a gas that emanates from the flooring over time.  Long-term exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia.  Formaldehyde also causes burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain, and nausea.  It

1   has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals and poses a

2   particularly acute risk to children.

3       4.      In 2007, CARB adopted regulations designed to reduce public exposure to

4   formaldehyde.  The regulations established two phases of emissions standards that composite laminate

5   flooring products must meet:  an intial Phase 1, and later a more stringent Phase 2.  These regulations

6   require that any composite wood contained in flooring products be certified as having been

7   manufactured using compliant wood products throughout their production.

8       5.      Lumber Liquidators supervises and controls the manufacturing of composite laminate

9   flooring products in several mills in China.  Lumber Liquidators also packages, distributes, markets,

10  and/or sells composite laminate flooring products that have been manufactured in China to consumers in

11  California and throughout the country.

12      6.      From October 2013 through November 2014, three accredited laboratories tested the

13  formaldehyde emissions of laminate wood flooring from several nationwide retail outlets, including

14  Home Depot, Lowe's, and Lumber Liquidators.  These laboratories employed testing methods that are

15  consistent with CARB regulations and with standard operating procedures CARB has recommended.

16  Of the dozens of products tested, by far the highest formaldehyde levels were found in the composite

17  laminate flooring sold by Lumber Liquidators that was produced in China.  The levels of formaldehyde

18  gas emitted by these Chinese-made Lumber Liquidators products were several times the maximum

19  CARB limits and exceeded the standards promulgated in the Toxic Substances Control Act, 15 U.S.C. §

20  2601 *et seq*. (title VI – formaldehyde Standards of Composite Wood Products).  Similar products

21  manufactured in North America generally had much lower formaldehyde levels that complied with the

22  formaldehyde emission standards promulgated by CARB.  Similar products tested from Lumber

23  Liquidators' competitors also showed significantly lower formaldehyde levels that generally complied

CLASS ACTION COMPLAINT            - 2 -

with the CARB formaldehyde emission standards.  The list of products that have been tested and found

to exceed the CARB limit for formaldehyde emissions is set forth in paragraph 33 below.

7.     Despite this discrepancy, Lumber Liquidators did not differentiate between its

domestically manufactured floor laminates and those made in China.  Defendant's labels on its Chinese

composite laminate flooring products state that the products comply with strict formaldehyde emission

standards promulgated by CARB by stating "California 93120 Phase 2 Compliant Formaldehyde."

8.     In 2014 and early 2015, television news program, "60 Minutes," conducted an

independent investigation into Lumber Liquidators' Chinese-made flooring products.  Investigators

purchased 31 boxes of various Chinese-made flooring products from various Lumber Liquidators stores

around the country and sent the sample for testing at two certified labs.  Of the 31 samples, only one was

compliant with CARB formaldehyde emissions standards.  "Some were more than 13 times over the

California limit."[1]

9.     60 Minutes also sent undercover investigators to three different mills in China that

manufacture laminates and composite flooring on behalf of Lumber Liquidators.  60 Minutes reported

that:

> Employees at the mills openly admitted that they use core boards with
> higher levels of formaldehyde to make Lumber Liquidators laminates,
> saving the company 10-15 percent on the price.  At all three mills they
> also admitted [to] falsely labeling the company's laminate flooring as
> CARB [compliant].[2]

10.    Lumber Liquidators does not give consumers any warnings about unlawful

formaldehyde levels in its composite laminate flooring products.  Instead, along with its product labels,

it represents on its website and warranties that its flooring products comply with strict formaldehyde

---

[1] *Lumber Liquidators Linked to Health and Safety Violations*, 60 Minutes (Mar. 1, 2015),
available at http://www.cbsnews.com/news/lumber-liquidators-linked-to -health-and-safety-
violations/ (last visited March 4, 2015).

[2] *Id.*

CLASS ACTION COMPLAINT          - 3 -

standards. Lumber Liquidators has made false and misleading statements that its flooring products comply with CARB formaldehyde standards, and the even more stringent European formaldehyde standards. Lumber Liquidators' website falsely states, "we not only comply with laws-we exceed them." "Highest Quality Flooring. GUARANTEED."[3]

11. Lumber Liquidators has continually sold these products to custmers in California, Florida, Michigan, and throughout the country at its retail stores, through its retail website, www.lumberliquidators.com, and using its toll-free customer service telephone line.

12. Plaintiffs purchased and installed a Lumber Liquidators product that was manufactured in China, labeled as being CARB compliant, and was of a type found to have formaldehyde levels that exceed CARB limits. Plaintiffs seek to represent themselves and similarly situated persons in California, Florida, and Michigan who have purchased Defendant's composite laminate flooring products that were manufactured in China, labeled as CARB compliant, and sold to consumers in the respective states in which they reside ("the putative Classes"). Plaintiffs seek restitution of monies they and the putative Classes spent on Defendant's flooring products, the cost of replacing the products, injunctive relief enjoining Defendant's ongoing unlawful, unfair, and fraudulent business practices, and other damages on behalf of themselves and the putative Classes.

13. Plaintiffs' counsel provided Defendant with a Notice of Violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* by certified mail on March 5, 2015 on behalf of a proposed class of California consumers. On March 31, 2015, Counsel sent a subsequent letter on behalf of Plaintiffs Lila Washington and Laura Washington and the proposed California Class described below. In the event Defendant does not take the appropriate actions itemized in the notice within 30 days, Plaintiffs intend to amend their complaint to add a claim under the Act.

---

[3] http://www.lumberliquidators.com/11/flooring/quality?WT.ad-GLOBAL FOOTER Quality (last visited on March 2, 2015, Page unavailable as of March 4, 2015).

CLASS ACTION COMPLAINT      - 4 -

## II.      JURISDICTION

14.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and there is complete diversity of citizenship.  Members of the Class are each residents of and domiciled in a State different from the Defendant.

15.      This Court has personal jurisdiction over the parties in this action by the fact that Defendant is a corporation that is licensed to do business in the state of California or otherwise conduct business in the state of California.

16.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as the unlawful practices are alleged to have been committed in this District, Defendant regularly conducts business in this District, and some of the named Plaintiffs are citizens of this District.

## III.      PARTIES

17.      Plaintiff Lila Washington is a resident of San Jose, California, and domiciled in California.

18.      Plaintiff Laura Washington is a resident of San Jose, California, and domiciled in California.

19.      Plaintiffs Kenneth and Casandra Barrett are residents of Dorr, Michigan, and domiciled in Michigan.

20.      Plaintiffs Ryan and Kristin Brandt are residents of Fort Myers, Florida, and domiciled in Florida.

21.      Defendant Lumber Liquidators Inc. is a Delaware corporation with its headquarters and principal place of business at 3000 John Deere Rd., Toano, VA 23168.  Lumber Liquidators, Inc. distributes, markets, and/or sells composite laminate flooring products and actively conducts business throughout the states of California, Michigan, and Florida.

## IV.   FACTUAL ALLEGATIONS

**A.   Lumber Liquidators Represents that its Laminate Wood Flooring Products Meet California's Strict Emissions Standards for Products it Sells in Every State**

22.   The emissions limits set by the California Air Resources Board ("CARB") are among the most comprehensive and exacting in the country.  These standards have served as a model for national standards being considered by the Environmental Protection Agency.

23.   Defendant invokes these CARB standards and represents to consumers on its website, on its product packaging, and in various other materials that its composite laminate flooring products meet the CARB standards for formaldehyde emissions and are therefore safe.  Defendant unequivocally states that though CARB only legally governs products sold in the state of California, Lumber Liquidators ensures that its composite laminate flooring products meet the CARB standard no matter where they are sold.

24.   Lumber Liquidators' website states as follows:

Is Lumber Liquidators Compliant with the California law?

**Laminate and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards.** The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified regulation limits. The Third Party Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified.

Does CARB only apply to California?

Though it currently applies only to products sold in California, **Lumber Liquidators made a decision to require all of our vendors to comply with the California Air Resources Board regulations regardless of whether we intended** to sell the products in California or any other state/country.

What extra steps does Lumber Liquidators take to ensure compliance?

In addition to the California Air Resources Board requirements, **Lumber Liquidators regularly selects one or more finished products from each of its suppliers and submits them for**

CLASS ACTION COMPLAINT
- 6 -

1  **independent third-party lab testing.** This is done as a monitoring
2  activity to validate ongoing quality control.[4]

**B.    California's Formaldehyde Standards**

3

4      25.    In 1988, the State of California officially listed Formaldehyde (gas) as a chemical known

5  to cause cancer.

6      26.    In 1992, the CARB formally listed formaldehyde as a Toxic Air Contaminant in

7  California with no safe level of exposure.

8      27.    The CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde

9

10  Emissions from Composite Wood Products in April 2007.  The formaldehyde emission standards

11  became effective January 2009 and set decreasing limits in two Phases.  Cal. Code Regs., tit. 17, §

12  93120.2(a).

13      28.    The CARB Regulations apply to composite wood ("laminate") products including

14  flooring.  Cal Code Regs., tit. 17, § 93120.2(a).

15      29.    The CARB Phase 1 Emission Standard for MDF in effect from January 1, 2009 to

16  December 31, 2010, limited formaldehyde emissions to 0.21 parts per million ("ppm").  The Phase 2

17  Emission Standard for MDF dictates that, as of January 1, 2011, MDF flooring products such as those

18  involved in this action must emit no more than 0.11 parts per million ("ppm") of formaldehyde.  The

19  CARB Phase 1 Emission Standard for Thin MDF, which was in effect from January 1, 2009 to

20  December 31, 2011, limited formaldehyde emissions to 0.21 ppm.  The CARB Phase 2 Emission

21  Standard for Thin MDF dictates that, as of January 1, 2012, thin MDF flooring products such as those

22  involved in this action must emit no more than 0.13 ppm of formaldehyde.[5]

23

24

25

26  ──────────────────
[4] http://www.lumberliquidators com/11/flooring/ca-air-resources-board-regulations?Wt.ad—
27  GLOBAL_FOOTER_CaliRegCARB (last visited on March 4, 2015) (emphasis in original).

[5] Cal. Code Regs., fit. 17, § 93120.2(a).  (Hereinafter, the formaldehyde emission standards for
28  both MDF and Thin MDF will be referred to as the "CARB limit.")

CLASS ACTION COMPLAINT              - 7 -

30.     The CARB Regulations specify the test methods that may be used to determine whether products meet the CARB limit.  A product does not comply with CARB emission standards if the composit wood product was produced by an uncertified manufacturer or used certain materials without CARB approval or if record of testing conducted by the manufacturer or a third party certifier show that a particular composite wood product exceeded the CARB limit.[6]  In addition, a product does not comply with CARB emission standards if:

> A composite wood product produced by a manufacturer is tested at any time after it is manufactured, using either the compliance test method specified in section 93120.9 (a) or the enforcement test method specified in section 93120.9(b), and is found to exeed the applicable emission standard specified in Table 1.[7]

31.     Compliance with the CARB limits is based on the results of testing the composite wood products contained in finished goods, not the finished goods themselves.  The compliance test method specified in section 93120.9 (a) incorporates the test method specified in ASTM D 6007-02, as promulgated by the America Socienty for Testing and Materials.

32.     In September, 2013 CARB issued a document entitled Standard Operating Procedures for Finished Good Test Specimen Preparation Prior to Analysis of Formaldehyde Emissions from Composite Wood Products.  These Standard Operating Procedures directs the methods to be used to deconstruct finished goods and to remove the coating or laminate before testing the underlying composite wood product for formaldehyde emissions.

## C.     Lumber Liquidators' Composite Laminate Flooring Products

33.     Defendant supervises and/or controls the manufacturing and packaging of composite laminate flooring products in China that Defendant then distributes, markets, and/or sells in California and throughout the country.  Those composite laminate flooring products contain formaldehyde and

---

[6] Cal. Code Regs., fit. 17, § 93120.2(a) (1), (2).

[7] Cal. Code Regs., fit. 17, § 93120.2(a)(3).

CLASS ACTION COMPLAINT                - 8 -

emit formaldehyde gas at levels that exceed, and sometimes grossly exceed, the CARB limit. Those

composite laminate flooring products include the following:

    a.    8 mm Bristol County Cherry Laminate Flooring

    b.    8 mm Dream Home Nirvana French Oak Laminate Flooring

    c.    8 mm Dream Home Nirvana Royal Mahogany Laminate Flooring

    d.    12 mm Dream Home Ispiri African Thuya Burlwood Vinyl Laminate Flooring

    e.    12 mm Dream Home Ispiri Americas Mission Olive Laminate Flooring

    f.    12 mm Dream Home Ispiri Chimney Tops Smoked Oak Laminate Flooring

    g.    12 mm Dream Home Ispiri Mill River Walnut Laminate Flooring

    h.    12 mm Dream Home Ispiri Poplar Forest Oak Laminate Flooring

    i.    12 mm Dream Home Ispiri Sloan Street Teak Laminate Flooring

    j.    12 mm Dream Home Kensington Manor Antique Bamboo Laminate Flooring

    k.    12 mm Dream Home Kensington Manor Cape Doctor Laminate Flooring

    l.    12 mm Dream Home Kensington Manor Fumed African Ironwood Laminate Flooring

    m.    12 mm Dream Home Kensington Manor Glacier Peak Poplar Laminate Flooring

    n.    12 mm Dream Home Kensington Manor Golden Teak Laminate Flooring

    o.    12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10029601)

    p.    12 mm Dream Home Kensington Manor Handscraped Imperial Teak Laminate Flooring (SKU 10023958)

    q.    12 mm Dream Home Kensington Manor Handscraped Summer Retreat Teak Laminate Flooring

CLASS ACTION COMPLAINT      - 9 -

r.      12 mm Dream Home Kensington Manor High Sholed Hickory Laminate Flooring

s.      12 mm Dream Home Kensington Manor Sandy Hills Hickory Laminate Flooring

t.      12 mm Dream Home Kensington Manor Tanzanian Wenge Laminate Flooring

u.      12 mm Dream Home Kensington Manor Warm Springs Chestnut Laminate Flooring

v.      12 mm Dream Home St. James African Mahogany Laminate Flooring

w.      12 mm Dream Home St. James Blacksburg Barn Board Laminate Flooring

x.      12 mm Dream Home St. James Bunet Road Russett Laminate Flooring

y.      12 mm Dream Home St. James Brazilian Koa Laminate Flooring

z.      12 mm Dream Home St. James Chimney Rock Charcoal Laminate Flooring

aa.     12 mm Dream Home St. James Cumberland Mountain Oak Laminate Flooring

bb.     12 mm Dream Home St. James Golden Acacia Laminate Flooring

cc.     12 mm Dream Home St. James Nantucket Beech Laminate Flooring

dd.     12 mm Dream Home St. James Oceanside Plank Bamboo Laminate Flooring

ee.     12 mm Dream Home St. James Vintner's Reserve Laminate Flooring

ff.     15 mm Dream Home St. James Sky Lakes Pine Laminate Flooring

34.    CARB regulations apply to all of the above-listed flooring products.

35.    On information and belief, each of the Lumber Liquidators' composite laminate flooring products listed in paragraph 29 above are manufactured in China using a common formula, design, or process.

CLASS ACTION COMPLAINT                    - 10 -

36.     On information and belief, each of the Lumber Liquidators' composite laminate flooring products listed in paragraph 33 above emit formaldehyde gas at levels that exceed the CARB limits.

37.     Between October and December, 2014, two separate laboratories, each accredited by the International Accreditation Service, conducted tests of no fewer than 31 samples from among the Lumber Liquidators flooring products listed in paragraph 33 above.  Each test was conducted and documented in accordance with ASTM D 6007-02 as mandated by CARB regulations.  The results showed that 30 of the 31 samples emitted formaldehyde at levels exceeding CARB limits.

**D.     Lumber Liquidators Misrepresents that its Composite Laminate Flooring Products Meet California Emissions Standards**

38.     Despite unlawful levels of formaldehyde emissions from its composite laminate flooring products, Defendant misrepresents to consumers on its website, product packaging, and warranties that its composite laminate flooring products meet the CARB standards for formaldehyde emissions.

39.     After the dangerous formaldehyde levels in Lumber Liquidators' products was featured on the news program "60 Minutes," Lumber Liquidator responded by posting a letter from its Chairman on its website stating:

> Let me make one thing very clear – our laminate products, all of our products, are 100% safe.
>
> …
>
> We comply with applicable regulations regarding our products, including California standards for formaldehyde emissions for composite wood products – the most stringent rules in the country. We take our commitment to safety even further by employing compliance personnel around the world and utilizing the latest in cutting-edge technology to provide our customers with top quality and high value flooring.[8]

40.     In addition, the product packaging for Lumber Liquidators' composite laminate flooring states: "CARB . . . CALIFORNIA 93120 Phase 2 Compliant Formaldehyde."  On information and

---

[8] http://www.lumberliquidators.com/sustainability/60-minutes-letter-from-tom/ (last visited March 4, 2015).

belief, this statement is presented on all Lumber Liquidators' composite laminate flooring product

packaging regardless of whether the flooring inside the packaging complies with the CARB standards.

41.     Lumber Liquidators' purchase orders come with a warranty stating that the customer's

purchased flooring products comply "with all applicable laws, codes and regulations," and "bear all

warnings, labels, and markings required by applicable laws and regulations."

42.     Instead of warning consumers about formaldehyde emissions from its composite

laminate flooring products, Lumber Liquidators' website states that it has Third Party Certifiers approve

its flooring products to meet CARB standards.

Regulations and Lumber Liquidators' Compliance

The California Air Reform Bill (CARB) requires that products containing Hardwood Plywood Veneer Core (HWP-VC), Hardwood Plywood Composite Core (HWP-CC), Particleboard and MDF be tested for emissions and products not meeting the strict standards for emissions may not be sold in California.

The Environmental Protection Agency has drafted national standards for formaldehyde emissions in composite wood products that are similar to those of California. Those standards have not yet been enacted.

All laminates and engineered flooring products sold by Lumber Liquidators are purchased from mills whose production method has been certified by a Third Party Certifier approved by the State of California to meet the CARB standards. The scope of the certification by the Third Party Certifier includes the confirmation that the manufacturer has implemented the quality systems, process controls, and testing procedures outlined by CARB and that their products conform to the specified formaldehyde- emission limits. The Third Party- Certifier also provides ongoing oversight to validate the manufacturers' compliance and manufacturers must be periodically re-certified. Though it currently applies only to products sold in California, Lumber Liquidators made a decision to require all of our suppliers to comply with CARB regardless of whether we intended to sell the products in California or any other state/country. In addition, our suppliers manufacture their products in accordance with the European standard which has stricter guidelines than the California. In addition to the CARB requirements, Lumber Liquidators regularly selects one or more products from each of its suppliers and submits

them for independent third-party lab testing. This is done as a
monitoring activity to validate ongoing compliance.[9]

43.     Lumber Liquidators materially misrepresents the safety of its composite laminate flooring products by advertising and representing that its flooring products are compliant with the CARB limit when in fact they are not.

44.     Lumber Liquidators materially omits any disclosure to consumers that they are buying composite laminate flooring products with unlawfully high levels of formaldehyde.

45.     These composite laminate flooring products have been sold by Defendant for use in California and throughout the country for more than four years.

46.     Defendant continues to distribute and sell its composite laminate flooring products to customers in California and throughout the country with the representation that they are CARB compliant, even though they are not.

47.     On information and belief, at all times relevant to this action, Lumber Liquidators has knowingly misrepresented its composite laminate flooring products as CARB compliant and knowingly failed to disclose to consumers the unlawful levels of formaldehyde emissions from its composite laminate flooring products.

48.     At the same time that Defendant made public statements to consumers that the composite laminate flooring products it sells are sourced from mills whose production methods are CARB compliant, that the products conform to CARB's specified formaldehyde emission limits, and the measures Lumber Liquidators takes to ensure full compliance by its suppliers – all to increase its sales – Defendant acknowledged the opposite to the SEC, stating, "While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, *we do not control our suppliers*.  Accordingly, we cannot guarantee that they comply with

---

[9] http://www.lumberliquidators.com/ll/flooring/Flooring101?Wt.ad=RIGHTNAV_Flooring101 (last visited March 4, 2015).

such laws and regulations or operate in a legal, ethical and responsible manner. Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner, could … expose us to legal risks as a result of our purchase of product from non-compliant suppliers."[10]

49.     Despite its stated concern that its suppliers might not comply with environmental regulations, Defendant has failed to sufficiently exercise its quality control over those suppliers to ensure that they comply with CARB standards, and Defendant continues to sell to California consumers, and to consumers throughout the country, composite laminate flooring products that Defendant obtains from those suppliers.

50.     On June 20, 2013, the news website *Seeking Alpha* published a lengthy article based on a letter to the California Air Resources Board. The letter and article documented high formaldehyde levels in Chinese-made composite laminate flooring sold by Lumber Liquidators, as shown by tests a certified laboratory conducted on three samples of Chinese-made composite laminate flooring sold by Lumber Liquidators. Enclosed with the letter were the actual test results showing that the tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits three and one-half times the maximum formaldehyde emission level. Nonetheless, the letter notes that Lumber Liquidators labeled the product as being CARB compliant.

51.     On information and belief, high formaldehyde content resins and glues are less expensive and dry more quickly than low formaldehyde glues and resins. By using high formaldehyde content resins and glues rather than low formaldehyde content resins and glues, Lumber Liquidators'

---

[10] Lumber Liquidators February 25, 2014 10-K at p. 14, http://investors.lumberliquidators.com/index.php?o=25&s=127 (emphasis added). In the same filing, Lumber Liquidators acknowledges that it oversees quality control in its Chinese mills: "We are able to set demanding specifications for product quality and our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures." *Id.* at p. 5.

Chinese manufacturers are able to produce composite laminate flooring more quickly and at higher volumes thereby reducing costs and generating greater profits for Lumber Liquidators.

52. On or about November 26, 2013, a putative federal securities class action lawsuit was filed against Lumber Liquidators in the United States District Court in the Eastern District of Virginia based on drops in the stock price following the *Seeking Alpha* article and its allegations concerning the formaldehyde emissions from Defendant's composite laminate flooring products. *Kiken v. Lumber Liquidators Holdings, Inc., et al.*, No. 4:2013-cv-00157 (E.D. Va). This case is currently pending. Lumber Liquidators was made aware during the pendency of this and other lawsuits of complaints and allegations that its composite laminate flooring products from China emit formaldehyde gas at levels that violate the CARB limit.

53. Numerous Lumber Liquidators customers have posted internet complaints on Defendant's website concerning formaldehyde emissions, including Deborah of North Fork, California who posted on the Consumer Affairs website on September 11, 2014:

> We spent thousands of dollars and went with the LL recommended professional installer... the product we were sold was supposedly Made in the USA--nope, China. One of my children cannot walk barefoot on the floor because he will blister from the formaldehyde content. We saved for years for this floor, it will need to be replaced. Please RUN to another dealer. This company does not care about the customer one bit. This has been a devastating blow to our family.[11]

54. Based on lawsuits, articles, and blog posts, and on its own first-hand knowledge, Defendant knew or should have known that its composite laminate flooring products were not compliant with CARB standards. Despite this knowledge, Defendant failed to reformulate its flooring products so that they are CARB compliant and failed to disclose to consumers that these products emit unlawful levels of formaldehyde. Instead, Defendant has sold and continues to sell composite laminate flooring

---

[11] http://www.Consumeraffairs.com/homeowners/lumber liquidators.html December 2, 2014.

products in California and throughout the country that exceed the CARB limit while continually representing to consumers that those products are CARB compliant.

55.     In response to the 60 Minutes report, Lumber Liquidators launched a campaign of disinformation in which it attacked the laboratories that conducted the tests showing that its products exceeded CARB limits for formaldehyde.  Lumber Liquidators claimed that the tests the laboratories conducted were improper because the laboratories removed the laminate coating before testing the composite core of the Lumber Liquidators flooring.  In fact, CARB specifically recommends that laminate coating be removed before testing.

56.     Lumber Liquidators next began offering a free home testing kit to customers who purchased its Chinese-made composite flooring products.  The third party providing the home testing kits is not independent, but is being paid by Lumber Liquidators.  The testing kits being offered do not use testing methods that are commonly accepted and that CARB recommends.  The tests Lumber Liquidators is offering are inherently unreliable, designed to under-report the formaldehyde levels present in the composite flooring, and are not designed to measure formaldehyde emissions from a particular source.

57.     Rather than seek to effectively remedy the harm and the risks to its customers' health and safety caused by its formaldehyde laden flooring products, Lumber Liquidators instead sought to cover up the dangers inherent in its products with mis-information and with a disingenuous public relations campaign.  By offering unreliable testing, by seeking to discredit the laboratories that conducted the tests finding that its products exceeded CARB limits for formaldehyde, and by promulgating misleading information regarding the dangers and properties of formaldehyde, Lumber Liquidators' actions will cause people to believe the floors in their homes are safe when they are not and will expose them to even greater risk than if Lumber Liquidators had honestly addressed the findings of multiple laboratories.

CLASS ACTION COMPLAINT                           - 16 -

58.     In light of the false representations Lumber Liquidators has made regarding formaldehyde levels, and in light of the health risks posed by formaldehyde, Plaintiffs and members of the Classes would reasonably fear for their safety by allowing the composite laminate flooring to remain in their homes.  It would therefore be reasonable and prudent to incur the cost of removing and replacing the laminate flooring rather than continue to incur the risks posed by the laminate flooring that may contain high levels of formaldehyde.

## V.      FACTS RELATING TO NAMED PLAINTIFFS

### A.      Laura Washington and Lila Washington

59.     Laura Washington shares a home with her mother, Lila Washington, in San Jose, California.  In October 2014, the Washingtons purchased approximately 300 square feet of 12 mm St. James Brazilian Koa Laminate Flooring at a Lumber Liquidators store located in San Jose, California. As stated on the packaging, the flooring was produced at the laminate mill in China.

60.     The Washingtons purchased the composite laminate flooring for the purpose of installing it in their home.  Lila Washington is 73 years old.  For the past seven years she has been battling various forms of cancer.  She has undergone multiple rounds of chemotherapy and radiation treatments. Consequently, her immune system is often compromised and she suffers repeated bouts of a variety of respiratory ailments.  The Washingtons specifically chose laminate flooring because they believed it would be safer and less likely to exacerbate Lila's breathing difficulties than carpeting or other flooring options.

61.     The Washingtons had heard of risks inherent in formaldehyde and of the risk that formaldehyde has been used in certain building materials.  They are also aware that California has some of the most stringent regulations in the country.  As residents of California, they expected that the flooring products they were considering complied with California regulations for all dangerous substances including formaldehyde.

CLASS ACTION COMPLAINT                           - 17 -
010503-11 768114 V1

62.     The Washingtons, viewed Lumber Liquidators' website and saw and heard varioius Lumber Liquidators advertisements.  They saw the representations Lumber Liquidators made regarding the safety and compliance of its products.

63.     At the time they purchased the composite laminate flooring from Lumber Liquidators, the Washingtons noted labels stating that the product was "California … Phase 2 Compliant for Formaldehyde."

64.     The Washingtons relied on the representations that the composite laminate flooring they were purchasing complied with California regulations regarding formaldehyde.  They would not have purchased the product absent this or an equivalent representation.

65.     At the time that Plaintiffs purchased their composite laminate flooring, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

66.     At the time of the purchase, Lumber Liquidators also failed to inform the Washingtons that the composite laminate flooring product they purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to the State of California to cause cancer and to exacerbate the harms to a person who already has cancer.

67.     The Washingtons had the Lumber Liquidators' flooring that they purchased installed in their home by a relative who followed Lumber Liquidators' instructions.  The installation involved cutting pieces of the laminate flooring to size and installing cut pieces in the home.

68.     On March 1, 2015, the Washingtons learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product were false.  In light of the risks to their health, and to the health of others in their home, the Washingtons must consider paying to have their flooring replaced.

CLASS ACTION COMPLAINT                    - 18 -

69.     Had the Lumber Liquidators' composite laminate flooring been CARB compliant as represented, the Washingtons would have been satisfied with their purchase.

**B.     Kenneth and Casandra Barrett**

70.     In March 2013, Plaintiffs Kenneth and Casandra Barrett purchased approximately 1,500 square feet of 12 mm Dream Home Ispiri America's Mission Olive Laminate Flooring at a Lumber Liquidators store located in Grand Rapids, MI for the purpose of having it installed in their home. As stated on the packages, this flooring product was produced at a laminate mill located in China.

71.     Mr. Barrett has a significant amount of experience with emissions standards that apply to home building products. Before he retired, Mr. Barrett worked as a customer service representative for a company that sold flooring tiles. He was aware of risks inherent in formaldehyde and of risks that building products could contain dangerous chemicals. He was also aware that California has some of the most exacting emission regulations in the country as pertaining to building materials.

72.     The Barretts were particularly concerned about the absence of toxic materials in the flooring they were considering purchasing as Ms. Barrett was diagnosed with breast cancer several years ago. She underwent chemotherapy and radiation treatments approximately seven years ago and was severely immunocompromised. Since then, she has been checked regularly. The Barretts are sensitive not to introduce any materials to their home that would irritate Ms. Barrett's health or that is potentially carcinogenic. In addition, both Mr. and Ms. Barrett suffer from allergies and are consciencous about not introducing materials to their home that would exacerbate allergy symptoms.

73.     Prior to purchasing the composite laminate flooring from Lumber Liquidators, Mr. and Ms. Barrett viewed Lumber Liquidators' website after having seen various advertisements. The Barretts saw and specifically noted representations Lumber Liquidators made regarding the safety and compliance of its composite flooring products – including the claim that Lumber Liquidators' composite flooring products that are sold throughout the counrtry comply with California emissions regulations.

CLASS ACTION COMPLAINT                    - 19 -

74.      The Barretts went to the Lumber Liquidators retail store and purchased the laminate flooring.  The Lumber Liquidators sales representative again touted the safety and quality of the product they were buying.  The label on each of the products stating "California … Phase 2 Compliant for formaldehyde" was further consistent with the Barretts' belief that the Lumber Liquidators' composite flooring product was safe and suitable to be installed in their home in light of their health-related issues.

75.      The Barretts relied on the representations that the composite laminate flooring they were purchasing did not contain unsafe levels of formaldehyde.  They would not have purchased the products absent this or an equivalent representation.

76.      At the time the Barretts purchased these composite laminate flooring products, Lumber Liquidators' representation that the products were compliant with CARB formaldehyde emission standards was false.

77.      At the time of the purchase, Lumber Liquidators also failed to inform the Barretts that the composite laminate flooring products they purchased actually exceeded the CARB formaldehyde emission limit and that formaldehyde is a chemical known to cause cancer.

78.      A flooring installer sent by Lumber Liquidators installed the composite laminate flooring in the Barretts' home.  Installation included cutting pieces of the laminate flooring tiles in a manner that exposed the composite core and released dust from the composite core.

79.      Soon after the flooring was installed, Mr. and Ms. Barrett each began experiencing symptoms that are consistent with those caused by exposure to formaldehyde.  They have experienced chronic runny noses and frequent headaches.  They have investigated a number of potential causes in their home but, until recently, the Barretts have been unable to identify the cause of their symptoms.

80.      On March 1, 2015, the Barretts learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product was false.  In light of the risks to their health, they now must consider incurring the cost of having their flooring removed and replaced

rather than to incur the health risks posed by the formaldehyde levels found in Lumber Liquidators' China-made products.

81. The Barretts contacted Lumber Liquidators to inquire about the dangers posed by the flooring in their home.  A Lumber Liquidators representative responded and claimed the tests 60 Minutes had used were not accurate because the labs removed the laminate from the core before testing. Lumber Liquidators claimed that the flooring was completely safe and told the Barretts that they must test the air but not the actual composite flooring.  These statements regarding the proper way to conduct testing, discrediting the testing that had already been performed, and regarding the safety of the composite flooring product in the Barretts' home were false and were a deliberate attempt to foster a false sense of security.

82. Had the Lumber Liquidators' composite laminate flooring been CARB compliant as represented, the Barretts would have been satisfied with their purchase and would keep the laminate flooring installed in their home.

## C.   Ryan and Kristin Brandt

83. In August 2014, Plaintiffs Ryan and Kristin Brandt purchased approximately 370 square feet of 12 mm Dream Home St. James Bunet Road Russett Laminate Flooring at a Lumber Liquidators store located in Fort Meyers, Florida.  As stated on the packages, this flooring product was produced at a laminate mill located in China.

84. Ms. Brandt was pregnant with their first child at the time the Brandts purchased the composite laminate flooring for the purpose of having it installed in their home.  They specifically intended to install the flooring in the bedroom to be used by the baby they were expecting.

85. Both Mr. and Ms. Brandt have experience with building materials.  Ms. Brandt's father is a general contractor and Mr. Brandt has worked with him in the past.  The Brandts were aware of risks inherent in formaldehyde and of risks that building products could contain formaldehyde and other

dangerous chemicals.  They were also aware that California has some of the most exacting emission regulations in the country.

86.     Prior to purchasing the composite laminate flooring from Lumber Liquidators, the Brandts viewed Lumber Liquidators' website.  Their safety concerns were satisfied by various representations Lumber Liquidators made regarding the safety of its products and the fact that all of its composite flooring products comply with California emissions standards – no matter where the products are sold.

87.     After viewing products on the Lumber Liquidators website, the Brandts went to the Lumber Liquidators retail store and ultimately purchased the composite laminate flooring.  The label on each of the products stating "California … Phase 2 Compliant for formaldehyde" further confirmed their belief, based on Lumber Liquidators' other representations, that the flooring product they were buying would be safe to install in a room in which their newborn baby would sleep.

88.     Mr. and Ms. Brandt relied on the representations that the composite laminate flooring they were purchasing did not contain unsafe levels of formaldehyde – and specifically that it contained levels of formaldehyde that met California standards.  They would not have purchased the product absent this or an equivalent representation.

89.     At the time the Brandts purchased the composite laminate flooring product, Lumber Liquidators' representation that the product was compliant with CARB formaldehyde emission standards was false.

90.     At the time of the purchase, Lumber Liquidators also failed to inform the Brandts that the composite laminate flooring products they purchased actually exceeded the CARB formaldehyde emission limits and that formaldehyde is a chemical known to cause cancer.

91.     Mr. Brandt installed the composite laminate flooring in one of the two rooms that the Brandts planned to install the flooring with the help of a friend who is a professional contractor.  They

CLASS ACTION COMPLAINT                    - 22 -

followed all applicable directions.  Installation required them to cut pieces of the laminate that exposed the composite core and caused the release of dust from the composite core.

92.     On March 1, 2015, the Brandts learned for the first time that the representations Lumber Liquidators made regarding the formaldehyde compliance of its product were false.  The Brandts have been unable to use the room in which they had already installed the composite laminate flooring.  In light of the risks to their health, and to the health of their infant son, they now must consider incurring the cost of having the flooring removed and replaced rather than to incur the health risks posed by the formaldehyde levels found in Lumber Liquidators' China-made products.

93.     After seeing the 60 Minutes report, the Brandts arranged to have the Lumber Liquidators composite flooring they purchased tested by an independent professional to determine the level of its formaldehyde content.  A technician came to there home and tested the composite flooring that had not yet been installed.  The results showed formaldehyde levels that exceeded CARB limits and that were unsafe for use in a home.

94.     The Brandts contacted Lumber Liquidators and reported their test findings.  A Lumber Liquidators representative responded by claiming the test they performed was not accurate, that the Brandts should instead use the air testing kit that Lumber Liquidators is offering to provide, and that testing should be done solely on the air in their home and not on the actual composite flooring product.  These statements regarding the proper way to conduct testing, discrediting the testing that had already been performed, and regarding the safety of the composite flooring product in the Brandts' home were false and were a deliberate attempt to foster a false sense of security.

95.     The Brandts have been unable to use the room in their house in which they installed the Lumber Liquidators' flooring.

CLASS ACTION COMPLAINT                      - 23 -

96.     Had the Lumber Liquidators' composite laminate flooring been CARB compliant as represented, the Brandts would have been satisfied with their purchase and would keep the laminate flooring installed in their home.

## VI.     CLASS ACTION ALLEGATIONS

97.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

98.     Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Classes consisting of:

**The California Class** (represented by Lila and Laura Washington)

All persons in California who purchased one or more composite laminate flooring product for their personal use rather than for resale or distribution, that was manufactured by or for Defendant in China, and that Defendant advertised or represented as being CARB compliant.

**The Michigan Class** (represented by Mr. and Ms. Barrett)

All persons in Michigan who purchased one or more composite laminate wood flooring product for their personal use rather than for resale or distribution, that was manufactured by or for Defendant in China, and that Defendant advertised or represented as being CARB compliant.

**The Florida Class** (represented by Mr. and Ms. Brandt)

All persons in Florida who purchased one or more composite laminate flooring product for their personal use rather than for resale or distribution, that was manufactured by or for Defendant in China, and that Defendant advertised or represented as being CARB compliant.

99.     Excluded from the Classes are governmental entities, Defendant, its affiliates and subsidiaries, Defendant's current or former employees, officers, directors, agents, representatives, their family members, and the members of this Court and its staff.

100.    Plaintiffs do not know the exact size or identities of the members of the proposed Classes, since such information is in the exclusive control of Defendant.  Plaintiffs believe that the Classes encompass thousands of individuals whose identities can be readily ascertained from

Defendant's books and records. Therefore, the proposed Classes are so numerous that joinder of all members is impracticable.

101. Plaintiffs believe the amount in controversy exceeds $5 million.

102. All members of the proposed Classes have been subject to and affected by the same conduct. All purchased composite laminate flooring products from the Defendant that were falsely advertised and represented as being compliant with CARB standards for formaldehyde, that rigorous efforts were made to ensure compliance, and that the composite laminate flooring products were therefore safe to install in homes. Instead, the levels of formaldehyde in the flooring products were, at a minimum, unknown and in many cases emitting unlawful levels of formaldehyde.

103. The lack of monitoring to ensure that the Chinese mills complied with CARB and the resulting non-compliant composite laminate flooring products was not disclosed to any Class members.

104. There are questions of law and fact that are common to the Classes, and predominate over any questions affecting only individual members of the Classes. These questions include, but are not limited to the following:

      a. Whether Lumber Liquidators properly and adequately monitored their Chinese manufacturing plants to ensure CARB compliance;

      b. Whether Lumber Liquidators' composite laminate flooring products that were manufactured in China and sold in California and throughout the country exceed the CARB limit;

      c. Whether Lumber Liquidators falsely labeled and advertised its Chinese-manufactured composite laminate flooring products as being CARB compliant;

      d. Whether any false representations regarding CARB compliance were made knowingly and willfully;

e.      Whether Lumber Liquidators concealed and omitted material facts from its communications with and disclosure to all Class members regarding the levels of formaldehyde in its composite laminate flooring products;

f.      Whether Lumber Liquidators exacerbated the potential harm to Class members by providing misinformation regarding the proper methods to test for formaldehyde in its products in a manner designed to cause Class members to erroneously believe the products installed in their homes are safe;

g.      Whether Lumber Liquidators breached express warranties to Class members regarding its composite laminate flooring products;

h.      Whether Lumber Liquidators' misrepresentations or omissions constitute unfair or deceptive practices under the respective consumer protection statutes of each of the states represented herein;

i.      Whether Lumber Liquidators' conduct entitles Class members to injunctive relief;

j.      Whether the above practices caused Class members to suffer injury; and

k.      The proper measure of damages and the appropriate injunctive relief.

105.    The claims of the individual named Plaintiffs are typical of the claims of the proposed Classes and do not conflict with the interests of any other members of the proposed Classes.

106.    The individual named Plaintiffs will fairly and adequately represent the interests of the respective Classes.  They are committed to the vigorous prosecution of the Classes' claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions.

107.    A class action is superior to other methods for the fast and efficient adjudication of this controversy.  Each Class member is entitled to restitution of the price of the composite laminate flooring

product, and the cost of installation and removal of the unlawfully sold flooring products.  The damages suffered by individual Class members are small compared to the expense and burden of individual prosecution of this litigation.  Individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit against Defendant to recover damages stemming from Defendant's unfair and unlawful practices.

108.    This putative class action meets the requirements of Fed. R. Civ. P. 23(b)(2) and (b) (3).

### VII.    CAUSES OF ACTION

### COUNT I

### FRAUDULENT CONCEALMENT

(By all Plaintiffs and all Classes described above)

109.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

110.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Classes described above.

111.    Lumber Liquidators concealed and suppressed material facts concerning the content of formaldehyde in its Chinese-made composite laminate flooring products.

112.    Defendant had a duty to disclose the true content of formaldehyde in its Chinese-made composite laminte flooring products because it was known and/or accessible only to the Defendant, who had superior knowledge and access to the facts, and the Defendant knew it was not known to or reasonably discoverable by Plaintiffs and the Classes.  These omitted and concealed facts were material because they directly impact the safety of the flooring products.  Whether composite flooring was manufactured with levels of formaldehyde that can pose significant health risks is a material safety concern.

113.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits, and did so at the expense of Plaintiffs and the Classes.

CLASS ACTION COMPLAINT
- 27 -

114.     On information and belief, Lumber Liquidators has still not made full and adequate disclosure and continues to defraud Plaintiffs and the Classes and conceal material information regarding the levels of formaldehyde that exist in its Chinese-made composite laminate flooring products.

115.     Plaintiffs and the Classes were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts.  Plaintiffs' and the Classes' actions were justified.  Lumber Liquidators was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Classes.

116.     Because of the concealment and/or suppression of the facts, Plaintiffs and the Classes sustained damage because they purchased and retained flooring products that they would not have purchased or installed in their homes had Defendant timely disclosed the fact that the products were not compliant with CARB standards.

117.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Classes' rights and well-being to enrich itself. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## <u>COUNT II</u>

## **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, *ET SEQ***

(By all Plaintiffs and all Classes described above)

118.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

119.     Plaintiffs bring this claim on their own behalf and on behalf of each member of the Classes described above.

120.    Plaintiffs and the other members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

121.    Lumber Liquidators is a "supplier" and "warrantor" within the meaning of 15 U.S.C. §§ 2301(4) – (5).

122.    Lumber Liquidators' flooring that was purchased separate from the initial construction of the structure into which it was to be installed constitutes a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

123.    Lumber Liquidators' express warranties and written affirmations of fact regarding the nature of the flooring, *i.e.*, that the flooring was in compliance with CARB formaldehyde standards, constitute a written warranty within the meaning of 15 U.S.C. § 2301(6).

124.    Lumber liquidators breached their warranties by manufacturing, selling, and/or distributing flooring products with levels of formaldehyde that exceed the CARB standards, or by making affirmative representations regarding CARB compliance without knowledge of its truth.

125.    Lumber Liquidators' breach deprived Plaintiffs and the other Class members of the benefit of their bargains.

126.    The amount in controversy of Plaintiffs' individual claims exceeds the value of $25.  In addition, the amount in controversy exceeds the value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this action.

127.    Defendant has been notified of its breach of written warranties and has failed to adequately cure those breaches.  As a direct and proximate result of Defendant's breaches of its written warranties, Plaintiffs and the other Class members sustained damages in amounts to be determined at trial.

**COUNT III**

**VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS
CODE § 17200, *ET SEQ.*,
UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS
ACTS AND PRACTICES**

(By Plaintiffs Washington and the California Class)

128. Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

129. California Business and Professions Code § 17200, *et seq.* prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

130. Throughout the Class Period, Defendant engaged in unlawful business acts and/or practices by selling and/or distributing composite laminate flooring products in California that exceed the CARB limit for formaldehyde emissions from composite wood products set forth in Title 17 of the California Code of Regulations, §§ 93120 – 93120.12 *et seq.*, specifically "Phase 2," which mandates the maximum levels of formaldehyde that laminate flooring products can emit.

131. Defendant's deceptive statements detailed above further violate California Health and Safety Code § 25249.6 (Proposition 65), which requires products emitting formaldehyde at levels above 40 micrograms per day to contain a health hazard warning.

132. Defendant further engaged in unlawful business acts and/or practices by not informing consumers that Defendant's composite laminate flooring products sold in California emit formaldehyde at levels that exceed the formaldehyde emission limit set forth in the CARB standards. These actions were misleading and deceptive, and violated the False Advertising Law, California Business & Professions Code §§ 17500, *et seq.* and the Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.*

133. Throughout the Class Period, Defendant engaged in unlawful business acts and/or practices by making untrue, deceptive, or misleading environmental marketing claims on the labels of

its composite laminate flooring products' packaging and on promotional materials including pages of the Lumber Liquidators' website, in violation of California's "Greenwashing" Statute, Cal. Bus. & Prof. Code § 17580.5.  Such claims include, but are not limited to:  overstating the environmental attributes of the composite laminate flooring products it distributes in California, failing to substantiate that the laminate wood flooring products it distributes in California have received third-party certification of CARB compliance, and misrepresenting explicitly or through implication that the composite laminate wood flooring Defendant distributes in California is non-toxic.  *See* Cal. Bus. & Prof. Code § 17580.5(a).

134.    Throughout the Class Period, Defendant has engaged in unlawful business acts and/or practices by expressly warranting on every package of composite laminate flooring products it distributes and sells in California, as well as in promotional materials and product invoices, that the products comply with CARB formaldehyde standards and all other applicable laws and regulations when they do not.  This express warranty also appears on Defendant's website, and product invoices and instruction materials.  Defendant's breach of this express warranty violates California state warranty law, California Commercial Code § 2313.

135.    The acts, omissions, and practices alleged herein also constitute unfair business acts and practices in that Defendant's conduct is immoral, unscrupulous, and offends public policy by seeking to profit from Chinese-made composite laminate flooring products that emit dangerous levels of formaldehyde in violation of California law.

136.    The acts, omissions, and practices alleged herein also constitute fraudulent business acts and practices in that Defendant's representations regarding its compliance with CARB emission standards, regarding its measures to ensure CARB compliance by its Chinese manufacturers, and regarding the safety and quality of its composite laminate flooring are false, misleading, and are likely to deceive California customers.

137.     Plaintiffs relied on Defendant's misrepresentations.

138.     As a direct result of Defendant's unlawful, unfair, or fraudulent business acts and/or practices, Plaintiffs and Class members suffered injury in fact and lost money or property.

139.     Defendant profited from its sales of its falsely and deceptively advertised products to unwary California customers.

140.     Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution, injunctive relief against Defendant in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

## COUNT IV

### VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17500, *ET SEQ.*

(By Plaintiffs Washington and the California Class)

141.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

142.     Throughout the Class Period, Defendant engaged in unlawful and/or fraudulent conduct under California Business & Professions Code §§ 17500, *et seq.* ("the False Advertising Law"), by engaging in the sale of composite laminate flooring products, and publically disseminating various advertisements that Defendant knew or reasonably should have known were untrue and misleading. Defendant committed such violations of the False Advertising Law with actual knowledge or knowledge fairly implied on the basis of objective circumstances.

143.     Defendant's advertisements, representations, and labeling as described herein were designed to, and did, result in the purchase and use of the Chinese-made composite laminate flooring products and Defendant profited from its sales of these products to unwary consumers.

144.     Plaintiffs reasonably relied on Defendant's representations made in violation of California Business and Professions Code §§ 17500, *et seq.*

145.     As a direct result of Defendant's violations, Plaintiffs suffered injury in fact and lost money.

146.     Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, seek restitution and injunctive relief against Defendant in the form of an order prohibiting Defendant from engaging in the alleged misconduct described herein, and other relief as specifically prayed for herein.

## COUNT V

### VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750 *ET SEQ.*

(By Plaintiffs Washington and the California Class)

147.     Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

148.     Defendant is a "person" within the meaning of California Civil Code §§ 1761(c) and 1770, and provides "goods" within the meaning of Civil Code §§ 1761(a) and 1770.  Defendant's customers, including Plaintiffs and Class members, are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770.  Each purchase of Defendant's composite laminate flooring products by Plaintiffs and each Class member constitutes a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

149.     Each Class member purchased goods from Defendant that was primarily for personal, family, or household purposes.

150.     The Consumer Legal Remedies Act makes it unlawful for a company to:

   a.     Misrepresent the certification of goods.  Cal. Civ. Code § 1770(a)(2)(3);

   b.     Represent that goods have characteristics or approval which they do not have. Cal. Civ. Code § 1770(a)(5);

   c.     Represent that goods are of a particular standard, quality, or grade, if they are of another.  Cal. Civ. Code § 1770(a)(7);

d.      Advertise goods with intent not to sell them as advertised. Cal. Civ. Code § 1770(a) (9).

e.      Represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not. Cal. Civ. Code § 1770(a) (16).

151.    Throughout the Class Period, Defendant violated and continues to violate the above-mentioned provisions.

152.    As a direct and proximate result of Defendant's violations, Plaintiffs and Class members have suffered and are continuing to suffer irreparable harm.

153.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the California Consumer Legal Remedies Act because Defendant is still representing that the flooring products have characteristics and qualifications which are false and misleading, and has injured Plaintiffs and Class members.

154.    In accordance with Civil Code § 1780 (a), Plaintiff and members of the Class seek injunctive and equitable relief for Lumber Liquidators' violations of the CLRA that includes an order prohibiting Defendant from continuing to sell non-CARB compliant composite laminate flooring products and prohibiting Defendant from advertising or labeling non-compliant products as being CARB compliant. In addition, after mailing appropriate notice and demand in accordance with Civil Code § 1782(a) and (d), Plaintiffs will amend this Class Action Complaint to include a request for damages. Plaintiffs and members of the Class request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief, including attorneys' fees and costs, as provided in Civil Code § 1780 and the Prayer for Relief.

# COUNT VI

## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT

(By Plaintiffs Barrett and the Michigan Class)

155.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

156.    Lumber Liquidators, by the actions complained of herein, has violated the Michigan Consumer Protection Act, MCL § 445.901 et seq. ("Michigan CPA") entitling Plaintiffs and the members of the Michigan Class to damages and relief under the Michigan CPA.

157.    Lumber Liquidators used deception, false pretense, misrepresentation, and omitted key facts regarding the formaldehyde content and compliance with CARB in order to entice customers to purchase its Chinese-made composite laminate flooring products.

158.    The fact that formaldehyde emissions from its composite laminate flooring products exceeded CARB standards and posed risk to human health is a material fact that Defendant was obligated to disclose to consumers.

159.    Defendant's conduct of concealing the fact that its Chinese mills did not comply with CARB regulations constitutes a knowing concealment, suppression or omission of any material fact. Lumber Liquidators was and is aware that its concealment, omission, and misrepresentation of the actual levels of formaldehyde in its composite flooring products will cause Plaintiffs and the Class to unknowingly purchase flooring products that are unsafe, and Defendant intended this result.

160.    Lumber Liquidators' conduct as set forth herein occurred in the course of trade or commerce.

161.    Lumber Liquidators' conduct as set forth herein affects the public interest because it was part of a generalized course of conduct affecting numerous customers throughout the state of Michigan and throughout the country.

CLASS ACTION COMPLAINT                                    - 35 -

010503-11 768114 V1

162.    Plaintiffs and the Class inherently relied on the representations Lumber Liquidators made regarding the basic safety and suitablility of its products for use in homes.

163.    Plaintiffs and the Class suffered ascertainable losses in the form of money they paid for products they would not have purchased absent Defendant's misrepresentations and the cost of remedying the risks by removing and replacing the Chinese-made composite laminate flooring with non-toxic products.  Plaintiffs and Class members did not receive the benefit of their bargain because they were sold a product for use in their homes, represented to be safe and compliant, but which is unfit for use and dangerous to their health.

164.    The ascertainable losses of Plaintiffs and the Class are a direct and proximate result of Lumber Liquidators' actions alleged above.

165.    Lumber Liquidators is liable to Plaintiffs and Michigan Class members for damages in an amount to be determined at trial, including attorneys' fees, costs, and statutory damages, and should be enjoined from continuing to engage in these unlawful, deceptive, and unreasonable practices as alleged herein.

## COUNT VII

### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

(By Plaintiffs Brandt and the Florida Class)

166.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

167.    Defendant's advertising, labeling, and representations regarding the formaldehyde content and compliance with CARB made use of deception, false promises, misrepresentations and material omissions in connection with the sale and advertisement of its composite flooring products.  In so doing, Defendant engaged in unlawful, deceptive, and unconscionable trade practices in violation of Fla. Stat. § 501.201 *et seq*.

CLASS ACTION COMPLAINT                                    - 36 -

168.    Defendant's misleading marketing, advertising, packaging, and labeling of its Chinese-made composite flooring products were likely to deceive reasonable consumers.

169.    Plaintiffs and other members of the Class were deceived by Defendant's deceptive trade practices.  Lumber Liquidators' misrepresentations and omissions were for the purpose of, and did, induce Plaintiffs and the other members of the Class to act or refrain from acting, or had the capacity to attract customers.

170.    As a direct and proximate result of Lumber Liquidators' deceptive trade practices, Plaintiffs and the other members of the Class have suffered damages that include, but are not limited to, the money they paid for the composite flooring products, the time and expense of installing the products, the cost of removing the products, and of otherwise remedying its effects.

171.    Lumber Liquidators has acted fraudulently, willfully, knowingly, and in total disregard for the rights, health, and well being of the Plaintiffs and Class.  Defendant knew or should have known that their conduct would result in harm to Plaintiffs and the Class.  Defendant continued its wrongful conduct nonetheless.  Punitive damages should be awarded to deter the actions of Defendant and others who might engage in similar conduct.

172.    Plaintiffs and the Class are entitled to damages in amounts to be proven at trial, and to an award of fees and costs as allowed under Fla. Stat. § 501.201 *et seq.*

## COUNT VIII

### BREACH OF EXPRESS WARRANTY

(By all Plaintiffs and all Classes described above)

**[Plaintiffs have sent Defendant notification of a breach of warranty as required under the statutes of the respective states at issue and intend to amend their complaint to add a claim for breach of express warranty based on the facts alleged herein absent a bona fide offer of an adequate remedy**.]

**COUNT IX**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

(By all Plaintiffs and all Classes described above)

173.    Plaintiffs re-allege and incorporate all paragraphs above as though fully set forth herein.

174.    Implied in the purchase of the composite flooring products by Plaintiffs and the Class is the warranty that the purchased products are legal, safe, and can lawfully be sold and possessed.

175.    Defendant knew or reasonably should have known that its Chinese-made composite flooring products were unlawful for sale pursuant to the Toxic Substance Control Act, 15 U.S.C. § 2601 *et seq.*

176.    When Defendant sold these products, it implicitly warranted that the products were merchantable in that they were legal and could be lawfully possessed and/or sold.

177.    No reasonable consumer would knowingly purchase a flooring product that is toxic, harmful, and illegal to own or possess.

178.    Lumber Liquidators' Chinese-made composite flooring products are unfit for the ordinary purpose for which they were intended.  These products are illegal, mislabeled, and economically worthless.

179.    As a result, Plaintiffs and the Class were injured through their purchase of unsuitable, useless, illegal, and unsellable products.

180.    Plaintiffs and the Class were damaged in the amounts they paid for the Chinese-made composite flooring, the amounts they paid to have it installed, and the amounts they now must pay to have it removed or remedied.

## COUNT X

### DECLARATORY RELIEF

181.    Plaintiffs incorporate by reference the foregoing allegations as if set fully herein.

182.    Plaintiffs, on behalf of themselves and all others similarly situated, contend that Defendant's sale of composite laminate flooring products do not comply with the CARB standards.  On information and belief, Defendant contends that its sale of laminate wood flooring products comply with the CARB standards.

183.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

### VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all Class members, seek the following relief against Defendant:

A.    An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the respective Classes;

B.    A finding and declaration that Defendant's policies and practices of labeling and advertising the composite laminate flooring products it sells in California and throughout the country as CARB compliant are unlawful pursuant to Title 17 of the California Code Regulations, §§ 93120-93120.12;

C.    A finding and declaration that Defendant's policies and practices of distributing and/or selling composite laminate flooring products in California and throughout the country with formaldehyde emissions that violate the CARB standards are unlawful pursuant to Title 17 of the California Code Regulations, §§ 93120-93120.12;

D.      Injunctive relief prohibiting Defendant from continuing to distribute and/or sell composite laminate flooring products that violate the CARB standards;

E.      Restitution of all money and/or property that Plaintiffs and Class members provided to Defendant for the purchase and installation of Defendant's Chinese-made composite laminate flooring products;

F.      Damages in an amount to be determined at trial for damages including actual, compensatory, and consequential damages incurred by Plaintiffs and Class members;

G.      An award to Plaintiffs and Class members of reasonable attorneys' fees and costs; and

H.      An award of such other and further relief as this Court may deem appropriate.

## IX.      DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so trouble.

DATED:  March 31, 2015

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____ /s/ Jeff D. Friedman _____

Jeff D. Friedman, Cal. Bar No. 173886
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone:  (510) 725-3000
Facsimile:  (510) 725-3001
jefff@hbsslaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steve W. Berman (*pro hac vice* pending)
Ari Y. Brown (*pro hac vice* pending)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
*steve@hbsslaw.com*
*ari@hbsslaw.com*

*Attorneys for Plaintiffs and the Proposed Class*

CLASS ACTION COMPLAINT                     - 41 -

1

**DECLARATION RE CLRA VENUE**

2    I, Laura Washington, do hereby declare and state as follows:

3    1.    I am a party plaintiff in Laura Washington and Lila Washington, on behalf of themselves

4  and all others similarly situated v. Lumber Liquidators, Inc., a Delaware corporation.  Pursuant to CAL.

5  CIV. CODE § 1780(d), I make this declaration in support of the Class Action Complaint and the claim

6
   therein for relief under CAL. CIV. CODE § 1780(a).  I have personal knowledge of the facts stated herein
7
   and, if necessary, could competently testify thereto.
8

9    2.    This action for relief under CAL. CIV. CODE § 1780(a) has been commenced in a county

10  that is a proper place for trial of this action because Lumber Liquidators does business throughout the

11  State of California.
12
       This declaration is signed under penalty of perjury under the laws of the State of California
13
   this ❏ day of March, 2015.
14

15

16                                         Laura Washington

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT                    - 42 -
010503-11 768114 V1

## DECLARATION RE CLRA VENUE

I, Lila Washington, do hereby declare and state as follows:

1.     I am a party plaintiff in Laura Washington and Lila Washington, on behalf of themselves and all others similarly situated v. Lumber Liquidators, Inc., a Delaware corporation. Pursuant to Cal. Civ. Code § 1780(d), I make this declaration in support of the Class Action Complaint and the claim therein for relief under Cal. Civ. Code § 1780(a). I have personal knowledge of the facts stated herein and, if necessary, could competently testify thereto.

2.     This action for relief under Cal. Civ. Code § 1780(a) has been commenced in a county that is a proper place for trial of this action because Lumber Liquidators does business throughout the State of California.

This declaration is signed under penalty of perjury under the laws of the State of California this 3 1 day of March, 2015.

_Lila Washington_

Lila Washington